IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JAMES LEE JACKSON                                                    PETITIONER
ADC #130514

V.                                    NO. 5:12CV00461-BSM-JTR

RAY HOBBS, Director,                                                 RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District

Judge Brian S. Miller. Any party may serve and file written objections to this

recommendation. Objections should be specific and should include the factual or legal

basis for the objection. If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection. An original and one copy of

your objections must be received in the office of the United States District Clerk no

later than fourteen (14) days from the date of the findings and recommendations. The

copy will be furnished to the opposing party. Failure to file timely objections may

result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the

United States District Judge, you must, at the same time that you file your written

objections, include a "Statement of Necessity" that sets forth the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.  An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Room A149
Little Rock, AR 72201-3325

## I. Introduction

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Petitioner, James Lee Jackson. (Docket entry #2.) Respondent filed a Motion to Dismiss and Brief in Support. (Docket entries #5, #6.) Petitioner filed a Response to the Motion to Dismiss, to which Respondent filed a Reply. (Docket entries #8, #10.) Thus, the issues are joined and ready for disposition.

Before addressing Petitioner's habeas claims, the Court will review the procedural history of the case.

On August 3, 2003, Katina Carter was killed by a gunshot wound to the back while standing in the parking lot of a nightclub. In 2004, a jury in Chicot County, Arkansas, convicted Petitioner of the first-degree murder of Ms. Carter, commission of a terroristic act, and possession of a firearm by a felon.[1] He was sentenced to life

---

[1]The following evidence was presented at trial: (1) a .38 caliber bullet was removed from the victim, and seven .40 caliber spent casings – but no .38 caliber casings – were found in the parking lot after the shooting; (2) Petitioner had a revolver that night which would not have automatically ejected casings onto the ground; (3) nine .38 caliber cartridges and one .38 caliber spent casing were found in the vehicle in which Petitioner was riding that night; (4) Petitioner's statement to police that people brought out guns during an altercation that night and he was grazed by a bullet; (5) his statement that he had a .38 caliber revolver that night, fired three or more shots, then dropped it; (6) Tony Brisco's testimony that Petitioner had a .38 caliber revolver in the car on their way to the nightclub; that Petitioner got into a fight in the club, then went outside, retrieved the revolver, and fired five to six rounds toward where the victim and others were standing; and that Brisco was unaware of any other shots being fired; (7) Kevin Jordan's testimony that he saw Petitioner leave the club following a fight, saw him behind some vehicles in the parking lot firing a chrome revolver, and saw him firing five or six shots in close succession toward where the victim was standing; and that Jordan heard no gunshots other than Petitioner's; (8) the club owner's testimony that he saw the victim fall as a "volley of shots" was fired from near a car, and that there were 25 to 30 people in the parking lot at the time of the shooting; (9) Aquontis Pitts' testimony that he went outside the club after fighting with Petitioner; that Petitioner fired "multiple shots rapid fire" from a chrome pistol in the direction where Pitts and others, including the victim, were standing; and that no one else fired shots; (10) Kenny Miles' testimony that about 12 people had guns outside; that several people were shooting; and that, although multiple shots were fired in quick succession, Petitioner was not the shooter who hit the victim because he had his pistol pointed over his head; and (11) Marcus Owens' testimony that he traveled to the club with Petitioner, that Petitioner had a gun and fired shots in the parking lot, and that other shots were fired as well. No one testified that they saw Petitioner shoot the victim, and no firearm was located or identified as the murder weapon. *Jackson, infra,* 214 S.W.3d at 234-35.

imprisonment.

On direct appeal to the Arkansas Supreme Court, Petitioner argued that the trial court erred: (1) in denying his directed-verdict motion challenging the sufficiency of the evidence;[2] and (2) in denying his motion for mistrial due to a communication between a juror and the murder victim's family. On September 29, 2005, the Arkansas Supreme Court affirmed Petitioner's convictions. *Jackson v. State*, 214 S.W.3d 232 (Ark. 2005).

Petitioner then filed a timely, *pro se* petition for post-conviction relief under Ark. R. Crim. P. 37, in Chicot County Circuit Court. *See* Ark. R. Crim. 37.2(c)(ii) (2012) (petition must be filed within sixty days of issuance of the appellate court mandate affirming a conviction).

On March 29, 2007, the trial court entered an order denying the Rule 37 petition. On April 4, 2007, Petitioner filed a timely notice of appeal challenging the trial court's order. However, he subsequently failed to lodge the record with the Arkansas Supreme Court within ninety days, thereby missing the July 3, 2007 filing deadline. *See* Ark. R. App. P.-Civ. 5(a); Ark. R. App. P.-Crim. 4(a).

Petitioner waited 531 days after filing his notice of appeal, until September 16,

---

[2]Specifically, Petitioner argued that there was no "direct link" between him and the bullet that killed the victim because, based on witness testimony, there were multiple gunshots and up to twelve people with guns in the parking lot at the time of the murder. *Id.* at 235.

2008, to tender a record to the Arkansas Supreme Court, along with a motion to lodge the record belatedly so that he could proceed with his appeal of the trial court's denial of his Rule 37 petition. On December 4, 2008, the Arkansas Supreme Court denied the motion. *Jackson v. State*, No. CR 08-1108, 2008 WL 5101527 (Ark. Sup. Ct. Dec. 4, 2008) (unpublished *per curiam*).

On December 17, 2012, Petitioner initiated this *pro se* habeas action. In his Petition, he argues that his constitutional rights were violated when he was deprived of the opportunity, before and after trial, to conduct DNA and fingerprint testing of the spent casings and cartridges retrieved from the crime scene and the vehicle in which he rode the night of the crimes. He alleges that, because his convictions were based on "extremely circumstantial" evidence, any "contradictive results [from the testing] could have raised reasonable doubts in the minds of the jurors" as to his guilt. (Docket entry #2, at 5-6.)

Respondent argues that Petitioner's claims are barred by the one-year statute of limitations applicable to federal habeas petitions. For the reasons discussed below, the Court recommends that the Petition be denied as untimely.

## II. Discussion

A state prisoner seeking to challenge his state court conviction in federal court

generally must file a petition for habeas relief within one year after the state judgment of conviction becomes final by conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). If he pursues certiorari review in the United States Supreme Court, the judgment becomes "final" when the Supreme Court "affirms [the] conviction on the merits or denies a petition for certiorari," or, if certiorari is not sought, when the time for filing such a petition expires. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012).

On September 29, 2005, the Arkansas Supreme Court affirmed Petitioner's convictions. He elected not to file a petition for writ of certiorari with the United States Supreme Court. *See* U.S. Sup. Ct. R. 13.1. Instead, before the ninety-day period for seeking certiorari expired, Petitioner filed a Rule 37 petition, which the trial court denied on March 29, 2007. On April 4, 2007, he filed a timely notice of appeal with the Arkansas Supreme Court.[3] However, as previously explained, he failed to lodge the record by the July 3, 2007 filing deadline. Thus, Petitioner had one year from July 4, 2007 to initiate this federal habeas action.

---

[3]The federal limitations period is tolled while a "properly filed" application for post-conviction relief is pending in state court. 28 U.S.C. § 2244(d)(2). An application is pending "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002). In Arkansas, that includes the ninety-day period during which an appellant has to timely perfect his appeal by filing the record with the Arkansas Supreme Court. *Mills v. Norris*, 187 F.3d 881, 883-84 (8th Cir. 1999).

Petitioner initiated this federal habeas action on December 17, 2012,[4] more than

five years later.

To excuse his untimeliness, Petitioner argues that he is relying on an "Actual

Innocence claim with newly discovered evidence." (Docket entry #8, at 1-2.) In

support, he submits an affidavit from Rodrick Ridgell, an alleged "eyewitness" to the

crime. (*Id.* at 5.) According to Petitioner, he obtained this affidavit "after years of

searching and investigating." The affidavit, notarized on January 7, 2013, states:

> I Rodrick Ridgell "DID NOT" witness James Jackson "TuTu" shoot
> Katina Carter "Tina X." I was at the club that night at Hamps. I did
> however see Alquontis Pitts, A.K.A. "Murder K"/"Cracker," shooting in
> the area where she was standing. I never seen TuTu with a gun. I know
> A. Pitts from doing time with him in prison. I am available for
> questioning.

(*Id.*)

The United States Supreme Court recently held, in *McQuiggin v. Perkins*, 133

S. Ct. 1924, 1928 (2013), that "actual innocence, if proved, serves as a gateway

through which a petitioner may pass whether the impediment is a procedural bar, as

it was in *Schlup* and *House*, or ... expiration of the statute of limitations." The Court

---

[4]Although the Clerk of Court received and file-stamped Petitioner's habeas Petition on December 20, 2012, it was deemed "filed," as a matter of law, on the date it was delivered to prison authorities for mailing to the Court. *Ford v. Bowersox*, 178 F.3d 522, 523 (8th Cir. 1999); *see* Rule 3(d), Rules Governing § 2254 Cases in United States District Courts. The Court has given Petitioner the benefit of assuming that he delivered his Petition to prison authorities for mailing on December 17, 2012, the day he signed it. (Docket entry #2, at 10.)

cautioned that "tenable actual-innocence gateway pleas are rare," and reiterated the "demanding" standard articulated in its previous cases: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995), and *House v. Bell*, 547 U.S. 518, 538 (2006)).

The actual-innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324; *Kidd v. Norman*, 651 F.3d 947, 951-53 (8th Cir. 2011), *cert. denied*, 133 S. Ct. 137 (2012). A federal habeas court must then consider "all the evidence, old and new, incriminating and exculpatory," and make a "probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538. A habeas petitioner's unjustifiable delay in coming forward with his new evidence is "a factor in determining whether actual innocence has been reliably shown." *McQuiggin*, 133 S. Ct. at 1928, 1935; *see Schlup*, 513 U.S. at 332.

The Court concludes that Petitioner has not met the demanding evidentiary standard established by United States Supreme Court precedent. In finding that the trial evidence was sufficient to support Petitioner's convictions, the Arkansas

Supreme Court stated:

> [T]here is no question that there is conflicting testimony concerning the number of people in the parking lot, the number of people who had guns, and the number of people who fired guns. In addition, there is conflicting testimony concerning where Carter was standing when she was shot. However, there was witness testimony that a volley of shots was fired by Jackson at the group where Carter was standing, and that Jackson was the only shooter. Carter was hit by a single bullet and died. ... The jury clearly believed the account given by the State's witnesses that Jackson fired the only shots and fired toward the group where Carter was standing and toward the nightclub. This conclusion, based on substantial circumstantial evidence that Jackson fired the shot that killed Carter and the shots that hit the club, excludes the only other reasonable hypothesis than that of guilt, that another fired the shots. ... [T]he jury was presented with substantial evidence and was free to believe or disbelieve the testimony that only Jackson fired a weapon.

*Jackson*, 214 S.W.3d at 236.

Considering Mr. Ridgell's affidavit, along with the other evidence, a reasonable juror could still find Petitioner guilty beyond a reasonable doubt. Mr. Ridgell, who apparently did not testify at trial, was one of numerous people present in the parking lot during the shooting, at least six of whom did testify. He wrote his affidavit ten years after the shooting, and he does not explain his delay in coming forward.[5] Mr. Ridgell's assertion that he never saw Petitioner with a gun is contradicted by the

---

[5]Efforts to undermine a verdict based solely upon affidavits "are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Such affidavits are particularly suspect when the affiant has "waited until the 11th hour" to come forward, the affidavits themselves contain inconsistencies, and other proof "points strongly to petitioner's guilt." *Id.* at 417-18.

testimony of multiple eyewitnesses, including Petitioner's own statement to police. In addition, Mr. Ridgell's statement that another individual was shooting "in the area where [the victim] was standing" is consistent with the testimony of some witnesses and inconsistent with that of others. Importantly, Mr. Ridgell's assertion that *he never saw* Petitioner with a gun does not mean that Petitioner did not have one, and his assertion that someone else was shooting does not mean that Petitioner was not shooting as well.

Adding Mr. Ridgell's affidavit to the evidentiary mix would simply provide additional conflicting testimony for the jury to reconcile, and additional credibility determinations for the jury to make. *See Moore v. Luebbers*, 446 F.3d 890, 903 (8th Cir. 2006) (no actual-innocence showing where a purported eyewitness's belated statement – that the shooter was someone other than the petitioner – would have set up a "swearing match" among eyewitnesses, "a circumstance that already existed"). Accordingly, Petitioner has not met the actual-innocence standard.

Although not specifically argued by Petitioner, the Court has also considered whether he is entitled to equitable tolling of the one-year limitations period.[6] Because the United States Supreme Court has held that § 2244(d) is a statute of limitations, not

---

[6]*McQuiggin* analyzed actual innocence as an "equitable exception" *overriding* the statute of limitations, rather than as an extension of the limitations period through equitable tolling. *McQuiggin*, 133 S. Ct. at 1931.

a jurisdictional bar, it may be subject to equitable tolling if a petitioner can show that: (1) he has been "pursuing his rights diligently," but (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2560, 2562 (2010). However, Petitioner has not shown that he acted "diligently" in asserting his federal habeas claims or that some "extraordinary circumstance" prevented him from filing a timely habeas petition.

First, the factual basis of Petitioner's federal habeas claim – that he was denied DNA and fingerprint testing – clearly was available during the running of the one-year limitations period. The circumstantial nature of the evidence against him was the main focus of his arguments in 2005 challenging the sufficiency of the evidence in his direct appeal to the Arkansas Supreme Court. In addition, even if he did not have the benefit of Mr. Ridgell's affidavit, he had similar trial testimony from other witnesses that someone else did the shooting. In fact, this appears to have been his defense at trial and his primary contention on direct appeal.

Second, in December 2008, the Arkansas Supreme Court denied his motion to belatedly tender the record in his post-conviction appeal. Petitioner then waited almost four years before initiating this federal habeas action. This does *not* show diligence. *See Pace v. Diguglielmo*, 544 U.S. 408, 419 (2005) (petitioner failed to pursue his rights diligently where he waited years before filing a state post-conviction petition,

11

then waited five more months after his post-conviction proceedings became final before seeking federal habeas relief); *Nelson v. Norris*, 618 F.3d 886, 893 (8th Cir. 2010) (no diligence where petitioner did not file his federal habeas petition until nine months after state supreme court denied rehearing in his post-conviction proceeding); *Earl v. Fabian*, 556 F.3d 717, 724 (8th Cir. 2009) (no equitable tolling where petitioner waited to file his federal petition until eight months after receiving notice that his judgments were final).

Finally, Petitioner has not demonstrated any "extraordinary circumstances" as required by *Holland*. The Eighth Circuit has repeatedly held that a petitioner's pro se status, lack of legal knowledge or legal resources, or any confusion about the federal limitations period or state post-conviction law, does *not* justify equitable tolling. *See, e.g., Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012); *Shoemate v. Norris*, 390 F.3d 595, 597-98 (8th Cir. 2004).

Accordingly, equitable tolling of the one-year statute of limitations does not apply.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that:

1.      Respondent's Motion to Dismiss (docket entry #5) be GRANTED;

2.      This 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (docket entry #2) be DENIED and this case be DISMISSED, WITH PREJUDICE; and

3.      A Certificate of Appealability be DENIED; *see* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

DATED this 7th day of August, 2013.

_____
UNITED STATES MAGISTRATE JUDGE